JUDGE HOLWELL



## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS TURBERG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MEDIACOM COMMUNICATIONS CORPORATION, ROCCO B. COMMISSO, MARK E. STEPHAN, THOMAS V. REIFENHEISER, NATALE S. RICCIARDI, SCOTT W. SEATON, ROBERT L. WINIKOFF, and JMC COMMUNICATIONS LLC,<br><br>Defendants. | Case Number _____<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Thomas Turburg ("Plaintiff") by his attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of the stockholders of Mediacom Communications Corporation ("Mediacom" or the "Company") against defendants Mediacom, and its Board of Directors (the "Board") arising out of a management led buyout of the Company by its founder, Chairman and Chief Executive Officer, Rocco B. Commisso ("Commisso"), in a deal valued at of approximately $600 million (the "Proposed Transaction").

2.      Specifically, on November 12, 2010, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Commisso, which provides for the acquisition of all of the Company's outstanding shares, not owned by Commisso, for $8.75 per share in cash.

3. Commisso currently owns approximately 40% of the outstanding shares of Mediacom Class A and Class B common stock, representing approximately 87% of the Company's voting power entitled to vote on the Merger Agreement.

4. In pursuing their unlawful objective to squeeze out Mediacom's public shareholders, each of the defendants violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, diligence, good faith and fair dealing, independence, and candor.

5. Namely, because the Individual Defendants (as defined herein) dominate and control the business and corporate affairs of Mediacom and are in possession of material, nonpublic information concerning Mediacom's financial condition and business prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Mediacom. Nonetheless, instead of attempting to negotiate a contract reflecting the best consideration reasonably available for the Mediacom shareholders who they are duty-bound to serve, the Individual Defendants disloyally placed their own interests first and tailored the terms and conditions of the Proposed Transaction to meet their own personal needs and objectives, specifically the needs and objectives of Commisso. Therefore, the Proposed Transaction is unfair both with respect to price and process and is designed to benefit Mediacom's insiders to the detriment of Plaintiff and Mediacom's public shareholders.

6. To remedy defendants' breaches of fiduciary duty and other misconduct, Plaintiff seeks, *inter alia*:  (i) injunctive relief preventing consummation of the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a transaction that provides the highest value for shareholders; (ii) a directive to the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests

of Mediacom's shareholders; and (iii) rescission of, to the extent already implemented, the

Merger Agreement or any of the terms thereof.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c),

and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the

amount in controversy exceeds $75,000, exclusive of interests and costs.   Given that the

Proposed Transaction is valued at $600 million, the injunctive relief sought herein will exceed a

sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because one or more of

the defendants, including Mediacom, either resides in or maintains executive offices in this

District, and a substantial portion of the transactions and wrongs that are the subject of this

complaint, occurred in substantial part in this District. Finally, the defendants have received

substantial compensation in this District by doing business here and engaging in numerous

activities that had an effect in this District.

## THE PARTIES

9.      Plaintiff Thomas Turberg is and was, at all times relevant hereto, a holder of

Mediacom common stock.  Plaintiff is a citizen of Pennsylvania.

10.     Mediacom is a Delaware corporation with its principal executive offices located

at 100 Crystal Run Road, Middletown, New York 10941.  The Company is the nation's seventh

largest cable television provider based on the number of basic video subscribers, and among the

leading cable operators focused on serving the smaller cities and towns in the United States.

Mediacom's service areas have a significant concentration in the Midwest and Southern regions,

and the Company is the leading provider of broadband services in Iowa and the second largest in

Illinois.  Mediacom common stock trades on the NASDAQ Exchange under the ticker symbol "MCCC."

11.     Defendant Commisso is the Chairman and Chief Executive Officer of Mediacom. He has 31 years of experience with the cable industry and has served as Chairman and Chief Executive Officer since founding Mediacom's predecessor company in July 1995.  Defendant Commisso beneficially owns approximately 40% of the Company's common stock, representing approximately 87% of the Company's voting power, as mentioned above.  Commisso is a citizen of New Jersey, and resides at 7 Alford Drive, Saddle River, New Jersey 07458.

12.     Defendant Mark E. Stephan ("Stephan") is the Executive Vice President, Chief Financial Officer and a Director of Mediacom.  He has 23 years of experience with the cable industry and has served as Executive Vice President and Chief Financial Officer of Mediacom since July 2005.  Stephan is a citizen of New York, and resides at 68 Covered Bridge Road, Warwick, New York 10990.

13.     Defendant Thomas V. Reifenheiser ("Reifenheiser") is a Director of Mediacom, and retired as a Managing Director of JP Morgan Chase.  Reifenheiser is a citizen of Connecticut, and resides at 9 Watch Tower Road, Darien, Connecticut 06820.

14.     Defendant Natale S. Ricciardi ("Ricciardi") is a Director of Mediacom.  Ricciardi is a citizen of Connecticut, and resides at 9 Copper Beech Road, Greenwich, Connecticut 06830.

15.     Defendant Scott W. Seaton ("Seaton") is a Director of Mediacom.  Seaton is a citizen of Connecticut, and resides at 61 Londonderry Drive, Greenwich, Connecticut 06830.

16.     Defendant Robert L. Winikoff ("Winikoff") is a Director of Mediacom.  Winikoff is a citizen of Florida, and resides at 19600 Planters Point Drive, Boca Raton, Florida 33434.

17.     Defendants Commisso, Stephan, Reifenheiser, Ricciardi, Seaton, and Winkoff are referred to herein collectively as the "Individual Defendants."

18.     Defendant JMC Communications LLC ("Merger Sub") is a Delaware limited liability company. Defendant Commisso is the sole member and manager of Merger Sub, and with Merger Sub are named herein as aiders and abettors to the breaches of fiduciary duty described herein.

19.     Defendants Commisso and JMC are sometimes collectively referred to as Commisso.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

20.     By reason of the above Individual Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with Plaintiff and the other public stockholders of Mediacom who are being and will be harmed by the defendants' actions described herein (the "Class") and owe Plaintiff and the other members of the Class a duty of highest good faith, fair dealing, loyalty and full and adequate disclosure.

21.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person. In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the applicable state law requires the directors to take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves. To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)      contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)      discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

(d)      will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders.

22.      In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Mediacom, are obligated under applicable law to refrain from:

(a)      participating in any transaction where the directors' or officers' loyalties are divided;

(b)      participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)      unjustly enriching themselves at the expense or to the detriment of the public shareholders.

23.      The Individual Defendants are also obliged to honor their duty of candor to Mediacom's shareholders by, *inter alia*, providing all material information to the shareholders regarding a scenario in which they are asked to vote or tender their shares. This duty of candor ensures that shareholders have all information that will enable them to make informed, rational and intelligent decisions about whether to vote or tender their shares.

24.      Plaintiff alleges herein that defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties,

including their duties of loyalty, good faith, and independence owed to Plaintiff and other public shareholders of Mediacom. Defendants stand on both sides of the transaction, are engaging in self-dealing, and are obtaining for themselves personal benefits, including personal financial benefits not shared equally by Plaintiff or the Class. As a result of defendants' self-dealing and divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their Mediacom common stock in the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action pursuant to Rule 23 on behalf of himself and all other shareholders of the Company (except the defendants herein and any persons, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest), who are, or will be, threatened with injury arising from defendants' actions, as more fully described herein.

26.    This action is properly maintainable as a class action for the following reasons:

(a)    The Class is so numerous that joinder of all members is impracticable. As of September 30, 2010, there were over 68 million shares of Mediacom common stock issued and outstanding (41.1 million shares of Class A common stock and 27.0 million shares of Class B common stock), likely owned by thousands of shareholders.

(b)    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

(c)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially members or impede their ability to protect their interests.

(d)     To the extent defendants take further steps to effectuate the Proposed Transaction, preliminary and final injunctive relief on behalf of the Class as a whole will be entirely appropriate because defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

27.     There are questions of law and fact that are common to the Class including, *inter alia*, the following:

(a)     Whether the Individual Defendants have breached their fiduciary duties of due care, good faith, and loyalty with respect to Plaintiff and the other members of the Class in connection with the conduct alleged herein;

(b)     Whether the process implemented and set forth by the Individual Defendants in connection with the Proposed Transaction was fair to the members of the Class;

(c)     Whether the Individual Defendants have breached their fiduciary duty of candor by failing to disclose all material facts relating to the Proposed Transaction;

(d)     Whether Commisso and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties owed to Plaintiff and the other members of the Class as a result of the conduct alleged herein; and

(e)     Whether Plaintiff and the other members of the Class would be irreparably harmed if defendants are not enjoined from effectuating the transaction described herein.

28.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

29.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

30.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

31.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

32.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

***Background***

33.     Mediacom is the nation's seventh largest cable company based on the number of customers who purchase one or more video services, also known as basic subscribers. The Company is among the leading cable operators focused on serving the smaller cities in the United States, with a significant customer concentration in the Midwestern and Southeastern regions. Mediacom is the largest and second largest cable company in Iowa and Illinois,

respectively.   Approximately 69% of the Company's basic subscribers are in the top 100 television markets in the United States, commonly referred to as Nielsen Media Research designated market areas ("DMAs"), with more than 55% in DMAs that rank between the 60th and 100th largest.

34.    Through the Company's interactive broadband network, Mediacom provides customers with a wide variety of advanced products and services, including video services, such as video-on-demand, high-definition television ("HDTV") and digital video recorders ("DVRs"), high-speed data ("HSD") and phone service (commonly referred to as "Triple Play" services). Mediacom offers the Triple Play bundle of video, HSD and phone over a single communications platform, a significant advantage over most competitors in these service areas. As of September 30, 2010, the Company offered Triple Play services to approximately 94% of an estimated 2.81 million homes in 22 states.   As of the same date, the Company served approximately 1.20 million basic subscribers, 717,000 digital video customers, 827,000 HSD customers and 324,000 phone customers, aggregating 3.07 million revenue generating units ("RGUs").

35.    Mediacom's basic and digital video services compete principally with direct broadcast satellite ("DBS") companies, and the Company continues to face significant levels of price competition from these providers, who offer substantially similar video programming. Mediacom competes with these providers by offering the Triple Play bundle and interactive video services that are unavailable to DBS customers due to the limited two-way interactivity of DBS service. The Company's HSD service competes primarily with digital subscriber line ("DSL") services offered by local telephone companies; based upon the speeds Mediacom offers, the HSD product is superior to comparable DSL offerings in its service areas.   Mediacom's

phone service mainly competes with substantially comparable phone services offered by local telephone companies and with cellular phone services offered by national wireless providers. Mediacom offers effective cost savings of the bundled products and services provided, as well as the convenience of having a single provider contact for ordering, provisioning, billing and customer care.

36.     The Company's ability to continue to grow its customer base and revenues is dependent on a number of factors, including the competition Mediacom faces and general economic conditions.  As a result of continuing weak economic conditions and significant price competition from DBS providers, the Company has seen lower demand for its video, HSD and phone services, which has led to a reduction in basic subscribers and slower growth rates of digital, HSD and phone customers.

37.     On May 7, 2010, the Company announced its first quarter 2010 financial results, including a reduction of 62% year-over-year net income.  Following the announcement of the quarterly financials, the trading price of the Company's stock fell to a low of $5.18 per share on heavy trading volume.  However, prior to that, on April 29, 2010, the trading price of Mediacom common stock was as high as $7.30 per share.

38.     In addition, on May 6, 2010, shares of most major cable television carriers suffered declining prices after the Federal Communications Commission (the "FCC") announced that it would increase regulation on internet-access providers, as part of the FCC's ongoing efforts to prevent anti-competitive practices.

**Commisso's First Attempt to Purchase Mediacom**

39.     In an attempt to take immediate advantage of the Company's depressed stock price, Commisso delivered a non-binding proposal to the Board on May 31, 2010, contemplating

the acquisition of all of the Class A and Class B shares of Mediacom common stock not already beneficially owned by Commisso at a price of $6.00 per share in cash (the "Initial Proposal").

40.     Market professionals and investors reacted negatively to the Initial Proposal. A June 1, 2010 *Reuters* news article quoted Pivotal Research Group analyst Jeffrey Wlodarczak as saying, "[w]e believe $9 or $10 to be a much more defensible bid; however, we believe it highly unlikely Commisso will be able to raise to these levels." David Joyce, analyst at Miller Tabak & Co., who currently has a target price of $8.75 per share on the Company, was quoted in the same article as saying the Company "is worth 'far more than that.'" Joyce went on to state that "[t]he Chairman controls the company. It's pretty much up to him what happens," reiterating the notion that Commisso appears to be taking advantage of his control over the Company in attempting to acquire 100% of the equity ownership of the Company at a price that is grossly unfair to the Company's shareholders.

41.     In fact, the $6.00 per share offer represented a discount on the price of the Company from the start. Mediacom stock began to trade ***well above*** the Initial Proposal offer price, closing as high as $7.10 on June 14, 2010, barely two weeks after the Initial Proposal was announced. In fact, Mediacom has spent only ***one day*** below the $6 threshold since the Initial Proposal was announced, and closed as high as $7.39 on August 2, 2010.

42.     As a result, the "Special Committee" appointed to consider the Initial Proposal, comprised of directors Reifenheiser and Ricciardi, was left with no choice but to reject the offer. On August 31, 2010, Commisso announced that he had withdrawn the Initial Proposal after the Special Committee rejected his initial offer price. Indeed, as reported in an article published by *The Street* on September 2, 2010, "Mediacom's Board was hoping for $9 a share." Thus, the

Board had no alternative at that time but to reject the Initial Proposal in the face of public outrage.

### Mediacom Remains Optimistic

43.     After the Initial Proposal was rejected, the future prospects of the Company appeared to be trending positively. Indeed, Mediacom itself confirmed its expectations for growth in the multiple services the Company offers. For instance, in announcing third quarter financial results on November 8, 2010, defendant Commisso commented as follows:

> *[B]ut you should know that we're focused on moving this business to a much higher level. We have not only doubled our sales team, but concentrate on getting experienced account representatives. We are cautiously optimistic that these efforts will bear fruit.*
>
> We are staying on schedule with our two major strategic initiatives. The expansion of our DOCSIS 3.0 footprint to at least 50% of our service territory by the end of the year will expand our competitive advantage of our HSD products over those offered by our competition. And two, we're well aware – we're underway in the actual transition of bringing our phone platform in-house. We began the customer migration in August of this year and expect to complete it in the second quarter of next year. Owning the phone platform will not only provide meaningful cost savings, but will also give us greater control to enhance our commercial phone product and develop new services for commercial and large enterprise customers.

44.     The Company's Executive Vice President, John G. Pascarelli, further explored the Company's favorable position for future growth during the same conference call. He added:

> Now let me give you a brief update on the phone transition. In early August, we began the transition from a third-party provider to our own internally operated network. We are on schedule to transition all of our customers by the end of April of next year. We began seeing meaningful cost reductions during the first quarter of 2011 but do not realize the full impact of this savings until Q3 2011.
>
> Commercial services is a big part of our growth strategy, and it is clear to us we have the products and pricing structure to convince small and medium-sized businesses to use Mediacom for their voice and data requirements. We are investing more in people, in facilities today to position us for a sizable opportunity. We have doubled our staff with telecommunications salespeople, established regional sales management and we have started our outreach program

with value-added re-sellers.

*Momentum around the marketing and sales for our bundled SMB commercial product continues to build, and we are just beginning to see better and better traction in this customer growth.* Moreover, we will improve our overall competitive position when the transition to our own telephone switching platform is complete. It will give us the capability to offer new telecom products, not only to the SMB market, but also to larger enterprise users. Complementing these efforts is our continued strong demand from the major cell providers for our tower backhaul services.

We saw the beginning of a real recovery in both our local and national Advertising business in this quarter, led by political and automotive. Several of our states had very strongly contested political races this year and with some strength in Retail segment we expect a strong finish to this year. In closing, we are going to stay focused on aggressively marketing bundled services, successfully transitioning our phone customers, the commercial market and the extended roll out of our DOCSIS 3.0 platform. Operationally, we will continue to improve on our first call resolution and our higher network reliability creating a better customer experience.

45.    The potential for the Company's growth as the economy recovers was more fundamentally seen in connection with the announcement of the third quarter results on November 8, 2010. *Revenues rose 3.0% from the prior year period*, largely due to continued growth in high-speed data and, to a lesser extent, advertising and phone revenues, offset in part by lower video revenues. *Average total monthly revenue per basic subscriber rose 8.4% to $103.17.* Finally, RGUs grew 19,000 for the quarter and 104,000 year-over-year, representing a 3.5% annual gain.

**The Proposed Transaction**

46.    Despite the Company's positive outlook for growth, Medicom agreed to enter into the Proposed Transaction. On November 15, 2010, Mediacom issued a press release announcing that it had entered into a definitive merger agreement pursuant to which Defendant Commisso (through an entity created by Commisso) will acquire the outstanding shares of Mediacom for $8.75 cash per share. The press release for the Proposed Transaction touted the purported

14

"premium" the $8.75 cash per share price represented over the market price of Mediacom common stock, stating:

> The transaction results from extensive negotiations between Mr. Commisso and a Special Committee of independent directors of Mediacom formed in response to a "going private" proposal made on May 31, 2010 by Mr. Commisso to acquire all publicly held shares of Mediacom common stock for $6.00 per share. The final price of $8.75 per share represents a 46% premium above Mr. Commisso's original $6.00 offer and a 64% premium above the closing price of $5.33 for Mediacom's Class A Common Stock on the last trading day prior to the publication of Mr. Commisso's May 31 proposal.

> The merger is conditioned on a "majority of the minority" voting provision, which requires approval by holders of a majority of Mediacom's outstanding Class A shares not held by Mr. Commisso, his affiliates and immediate family, or Mediacom's directors and executive officers. The transaction is also subject to other customary closing conditions, the receipt of sufficient funds to pay the merger consideration and transaction costs pursuant to existing credit facilities of subsidiaries of Mediacom, and is expected to be completed in the first half of 2011.

> The Board of Directors of Mediacom, acting upon the unanimous recommendation of a Special Committee of independent directors, unanimously approved the merger agreement and has recommended that shareholders of Mediacom vote to approve the merger. After careful consideration and a thorough review with its independent advisors, the Special Committee determined that the transaction is in the best interests of the public shareholders of Mediacom.

47.    The $8.75 per share agreed to in the Proposed Transaction is a woefully inadequate price, and defendants' rationale for asserting that the premium supports a fair price is unsound as Mediacom stock has been trading at depressed levels; the Company is at the bottom of a cycle that is expected to improve as the economy emerges from the current recession. Indeed, the price offered by Commisso represents a premium of just 28% to Mediacom's November 12, 2010 closing price of $6.86 per share. A fair price cannot be based on a purported "premium" over a depressed market price and the $8.75 price is unfair to shareholders.

48.     Indeed, following the announcement of the Proposed Transaction, the price of Mediacom stock hovered around the consideration offered, immediately jumping to as high as $8.49 per share on November 22, 2010.

49.     As such, the Proposed Transaction is nothing more than another dubious attempt by Commisso to take advantage of the depressed trading prices of Mediacom's shares which, if consummated, will result in Mediacom's shareholders being squeezed out of their interest in the Company at a price below Mediacom's true value.

50.     In fact, market coverage reflects a similar sentiment.  Analyst reports following the announcement of the Proposed Transaction have remarked on the inadequacy of the $8.75 per share Proposed Transaction price.  For instance, David C. Joyce, an analyst following Mediacom for Miller Tabak & Co., LLC, commented that, despite the premium offered, "*longer-term investors are likely still going to be disappointed, since our various valuation metrics could suggest a mid-teens per share value in a couple of years.*"

51.     Given the Company's recent performance and future prospects, the consideration shareholders are to receive in the Proposed Transaction is inadequate.  Thus, the Individual Defendants have failed to maximize value for Mediacom's public shareholders.

***The Independence of the Individual Defendants and Special Committee is in Serious Doubt***

52.     The independence of the Individual Defendants, other than Commisso, is in serious doubt because they are, by virtue of their positions, beholden to Commisso and cannot be expected to review the Proposed Transaction independently an objectively.  Indeed, because Commisso owns 87% of the voting power of the Company's stock, he controls whether a nominated director is voted on to the Board, and re-elected thereafter.  Thus the Board members are beholden to Commisso for their very positions.

53.    The Company's 2010 Annual Proxy Statement, dated May 7, 2010, makes this

point clear, stating, in relevant part:

> *Votes required to elect directors and to adopt other proposals*
>
> Directors will be elected by a plurality of votes cast at the Annual Meeting. The affirmative vote of a majority of the voting power of our Class A common stock and Class B common stock, voting together as one class, that are present in person or by proxy at the Annual Meeting is required to: (i) approve the 2010 Employee Stock Purchase Plan; and (ii) ratify the appointment of PricewaterhouseCoopers LLP as our independent auditors for 2010.
>
> As of the record date, Rocco B. Commisso, our Chairman and Chief Executive Officer, beneficially owned approximately 87.0% of the voting power of our Class A common stock and Class B common stock, voting together as one class. See "Security Ownership of Management and Directors". ***Accordingly, the affirmative vote of Mr. Commisso alone is sufficient to adopt each of the proposals to be submitted to the stockholders at the Annual Meeting***. We have been advised by Mr. Commisso that he intends to vote "FOR" all of the proposals set forth in the notice attached to this proxy statement. (Emphasis added).

54.    In addition, the Company's Annual Report on Form 10-K to stockholders, filed

with the U.S. Securities and Exchange Commission ("SEC") on March 17, 2010, reiterates

Commisso's dominance and control over the Board:

> ***Our Chairman and Chief Executive Officer has the ability to control all major corporate decisions, and a sale of his stock could result in a change of control that would have unpredictable effects.***
>
> Rocco B. Commisso, our Chairman and Chief Executive Officer, beneficially owned shares of our common stock representing approximately 87.2% of the aggregate voting power as of December 31, 2009. As a result, Mr. Commisso generally has the ability to control the outcome of all matters requiring stockholder approval, ***including the election of our entire board of directors***, the approval of any merger or consolidation and the sale of all or substantially all of our assets. In addition, Mr. Commisso's voting power may have the effect of discouraging offers to acquire us because any such acquisition would require his consent.

55.    Each and every member of the Board is beholden to Commisso by virtue of his

control of the Company and selection of the Board. Thus, the "Special Committee," comprised

of directors Reifenheiser and Ricciardi, is similarly controlled by Commisso, and therefore

cannot be objective and disinterested when reviewing the Proposed Transaction. Accordingly, the "Special Committee" cannot be trusted to fairly evaluate the Proposed Transaction.

56.     Additionally, Individual Defendants Reifenheiser and Ricciardi each received payments from Mediacom in 2009 of $112,680 and $107,680 respectively, in cash and Company stock. Such compensation creates additional doubt as to the purported "independence" of the "Special Committee."

57.     In addition, half of the Board members are overtly conflicted in this transaction by virtue of their related party transactions. Both Commisso and Stephan have employment agreements with Medicom which provide for lucrative payouts in the event of severance and/or change in control of the Company. Moreover, defendant Winikoff is a partner of a law firm that serves as Medicom's outside general counsel. During 2009, the Company paid approximately $800,000 in fees to the law firm, for which Winikoff was credited. Finally, defendant Seaton has served in various managerial positions at both Bank of America and Credit Suisse First Boston, both of whom have provided extensive commercial banking, financial advisory and investment banking services to the Company. As such, the conflicts of the Individual Defendants prevent them from exercising the impartiality that they are required to carry out their fiduciary duties.

***The Preclusive Deal Protection Devices***

58.     On November 18, 2010, the Company filed a Form 8-K with the SEC wherein it attached the Merger Agreement. As part of the Merger Agreement, defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

59.     By way of example, §5.07 of the Merger Agreement, titled "No Solicitation," is a provision that bars the Board and any Company personnel from attempting to procure a price in

excess of the amount offered by Commisso.  Section 5.07 (a)(iii) of the Merger Agreement further demands that the Company terminate any and all prior or on-going discussions with other potential suitors.  As such, the Proposed Transaction is "locked up" in favor of Commisso and precludes the Board from soliciting alternative bids, which guarantees the only suitor will be Commisso.

60.   Pursuant to §5.07 (b) of the Merger Agreement, should an unsolicited bidder arise, the Company must notify Commisso of (i) such proposal or inquiry, (ii) the identity of the bidder making any such proposal or inquiry, and (iii) the material terms and conditions of any such proposal or inquiry.  Thereafter, should the Board determine that the unsolicited offer is superior (as defined in the Merger Agreement), §5.07 (c) grants Commisso four days to amend the terms of the Merger Agreement to make a counter-offer so that the competing bid ceases to constitute a superior proposal.  Commisso is able to match the unsolicited offer because he is granted unfettered access to the unsolicited offer, in its entirety, eliminating any leverage that the Company has in receiving a higher, unsolicited offer.

61.   Accordingly, the Merger Agreement unfairly assures that any "auction" will favor Commisso and take advantage of the due diligence of the foreclosed second bidder.

62.   In addition, the Merger Agreement provides that Mediacom must pay to Commisso a termination fee of $2,500,000 plus all fees and expenses incurred by Commisso in conjunction with the Proposed Transaction if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

63.   Ultimately, these preclusive deal protection devices illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal

to acquire all or a significant interest in the Company, especially when coupled with Commisso's majority voting power over the course of any offer designed to maximize shareholder value. The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or would reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions will foreclose the new bidder from providing the needed market check of Commisso's inadequate offer price.

64.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

65.     Plaintiff repeats and realleges each and every allegation set forth herein.

66.     The Individual Defendants have violated their fiduciary duties owed to the public shareholders of Mediacom and have acted to put their personal interests ahead of the interests of Mediacom shareholders or acquiesced in those actions by fellow defendants. The Individual Defendants have failed to take adequate measures to ensure that the interests of Mediacom's shareholders are properly protected and have embarked on a process that avoids competitive bidding and provides Commisso with an unfair advantage by effectively excluding other alternative proposals.

67.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, will unfairly deprive Plaintiff and other members of the Class of the true value of their Mediacom investment. Plaintiff and

other Members of the Class will suffer irreparable harm unless the actions of the Individual Defendants are enjoined and a fair process is substituted.

68. The Individual Defendants have breached their duties of loyalty, entire fairness, good faith, candor and care by not taking adequate measures to ensure that the interests of Mediacom's public shareholders are properly protected from over-reaching by Commisso.

69. By reason of the foregoing acts, practices, and courses of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

70. As a result of the actions of the Individual Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive their fair portion of the value of Mediacom's stock and businesses, and will be prevented from obtaining a fair price for their common stock.

71. Unless enjoined by this Court, the Individual Defendants will continue to breach the fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction to the disadvantage of the public shareholders, without providing sufficient information to enable Mediacom's public shareholders to cast informed votes on the Proposed Transaction.

72. The Individual Defendants have engaged in self-dealing, have not acted in good faith, and have breached, and are breaching, fiduciary duties owed to Plaintiff and the other members of the Class.

73. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which these actions threaten to inflict.

## COUNT II

### Claim Against Commisso and Merger Sub for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duties

74.     Plaintiff repeats and realleges each and every allegation set forth herein.

75.     The Individual Defendants breached their fiduciary duties to the Mediacom shareholders by the actions alleged supra.

76.     Such breaches of fiduciary duties could not, and would not, have occurred but for the conduct of Commisso and Merger Sub, which, therefore, aided and abetted such breaches through entering into the Proposed Transaction between Mediacom and Commisso.

77.     Commisso and Merger Sub had knowledge that it was aiding and abetting the Individual Defendants' breaches of fiduciary duties to Mediacom shareholders.

78.     Commisso and Merger Sub rendered substantial assistance to the Individual Defendants in their breaches of their fiduciary duties to Mediacom shareholders.

79.     As a result of Commisso and Merger Sub's conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiff and the other members of the Class have been, and will be, damaged in that they have been, and will be, prevented from obtaining a fair price for their shares.

80.     As a result of the unlawful actions of Commisso and Merger Sub, Plaintiff and the other members of the Class will be irreparably harmed in that they will be prevented from obtaining the fair value of their equity ownership in the Company.  Unless enjoined by the Court, Commisso and Merger Sub will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to Plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

22

81.     Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury which Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class, and against the Defendants as follows:

A.     Certifying this case as a class action, certifying Plaintiff as class representative and his counsel as class counsel;

B.     Declaring that the conduct of the Individual Defendants in approving the Proposed Transaction and failing to negotiate in good faith with Commisso and other acts and omissions set forth herein are breaches of the Individual Defendants' fiduciary duties;

C.     Preliminarily and permanently enjoining the Individual Defendants and all persons acting in concert with them from taking any steps to consummate the Proposed Transaction on the terms presently proposed;

D.     Preliminarily and permanently enjoining the Individual Defendants from initiating any defensive measures that would inhibit the Individual Defendants' ability to maximize value for Mediacom shareholders;

E.     To the extent the Proposed Transaction is consummated prior to this Court's entry of a final judgment, rescinding it and setting it aside or awarding rescissory damages;

F.     Directing defendants to account to Plaintiff and the Class for all damages suffered by them as a result of defendants' wrongful conduct alleged herein;

G.     Awarding Plaintiff the costs, expenses, and disbursements of this action, including attorneys' and experts' fees and, if applicable, pre-judgment and post-judgment interest; and

H.     Awarding Plaintiff and the Class such other relief as this Court deems just, equitable, and proper.

Dated: November 29, 2010                    **FARUQI & FARUQI, LLP**

By:_____

**Nadeem Faruqi**
369 Lexington Ave., 10th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331

*Attorneys for Plaintiff*